Below is an Opinion of the Court.

RANDALL L. DUNN
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| In Re: | ) | Bankruptcy Case |
| | ) | No. 08-33275-rld7 |
| JOSHUA JAMES STEWART and OLGA V. STEWART, | ) | |
| | ) | AMENDED MEMORANDUM OPINION |
| | ) | |
| Debtors. | ) | |

Emily Hawkins ("Hawkins"), an unsecured creditor,[1] moved to dismiss the debtors' (the "Stewarts") bankruptcy case under § 707(b)(2) and (b)(3)[2] on the grounds that the Stewarts' case is an abuse of the provisions of chapter 7.[3]

---

[1] The Stewarts scheduled Hawkins as a general unsecured creditor with a $19,168 contingent claim, based on claim(s) arising from her short-sale purchase of the Stewarts' condominium unit.

[2] Unless otherwise indicated, all chapter, section and rule references are to the federal Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037, as enacted and promulgated as of October 17, 2005, the effective date of most of the provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 110 Stat. 23 ("BAPCPA").

[3] Hawkins actually filed an objection to the chapter 7 trustee's
(continued...)

Page 1 - MEMORANDUM OPINION

1     Having listened to testimony and argument from both parties and

2 considered the record, including relevant documents from the docket and

3 relevant legal authorities, I deny Hawkins's motion to dismiss under

4 § 707(b)(2) and § 707(b)(3)(B) for the following reasons.

5

6 <u>Background</u>

7     The Stewarts filed their chapter 7 bankruptcy petition on

8 July 2, 2008. Consistent with § 521(a)(2)(A) and Rule 1007(b)(4)

9 [Interim], the Stewarts filed a "Chapter 7 Statement of Current Monthly

10 Income and Means-Test Calculation" ("Original Form B22A") and a

11 "Statement of Intention(s) Per 11 U.S.C. § 521(a)" ("Statement of

12 Intent").

13     The Stewarts indicated on the Original Form B22A that, based on

14 their calculations, the presumption of abuse under § 707(b)(2) did not

15 arise.[4]  On the Original Form B22A, they listed current monthly income of

16 _____

17     [3](...continued)

18 motion to settle and compromise a dispute with the Stewarts regarding
their claimed exemptions and a prepetition payment to their parents. At

19 the preliminary hearing on October 22, 2008, I decided to treat Hawkins's
objection as a motion to dismiss the case under § 707(b) and to abate

20 consideration of approval of the proposed settlement.

21     [4] BAPCPA amended § 707(b), which governs dismissal of chapter 7

22 cases. <u>Fokkena v. Hartwick</u>, 373 B.R. 645, 648 (D. Minn. 2007). "One of
the purposes of the amendment was to curb abuse by dismissing cases filed

23 by Chapter 7 debtors who seek discharge of their debts even though they
have the ability to repay their creditors and, thus, file under Chapter

24 13, under which debtors usually repay some or all of their debts." <u>Id.</u>
(citation omitted).

25     Section 707(b)(2) provides a complex mathematical formula, commonly
known as the "means test," which "gauges a debtor's ability to repay his

26 or her debts by measuring how much disposable income the debtor will have

                                                        (continued...)

Page 2 - MEMORANDUM OPINION

$5,815, which resulted in an annualized current income of $69,780. Although their annualized current monthly income exceeded the applicable median family income of $53,236 for a household of two in Oregon,[5] their deductions resulted in a monthly disposable income of -$4,653.42, or a 60-month disposable income of -$279,205.20, thereby demonstrating that they qualified for chapter 7 relief.

In calculating their monthly disposable income for § 707(b)(2) purposes, on line 42 of Part V of the Original Form B22A, "Future payments on secured claims," the Stewarts listed as a deduction an $8,666.67 monthly mortgage payment for their former residence located in Clackamas, Oregon.  The Stewarts indicated on their Statement of Intent that they would surrender the residence.  In fact, at the time the Stewarts filed their bankruptcy petition, the Stewarts were living in the

---

[4](...continued)
each month, after the deduction of allowable expenses."  In re Lindstrom, 381 B.R. 303, 304 (Bankr. D. Colo. 2007).  If the debtor's monthly disposable income is greater than a particular statutorily set amount, indicating that he or she has the ability to repay his or her debts, the case is presumed to be an abuse of chapter 7.  Fokkena, 373 B.R. at 649. The "Chapter 7 Statement of Current Monthly Income and Means-Test Calculation" provides the framework to apply this mathematical formula.

[5] Section 707(b)(7) provides a "safe harbor" for debtors whose annualized current monthly income (i.e., the debtor's current monthly income, as defined under § 101(10A), multiplied by 12) is equal to or less than the median family income for a family the size of the debtor's household in the applicable state.  In that instance, the presumption of abuse does not arise, and the debtor is not required to complete the means test.  Here, the Stewarts' annualized current monthly income exceeded the applicable median family income for a household of two in Oregon, requiring the Stewarts to complete the means test calculations.

Page 3 - MEMORANDUM OPINION

U.S. Virgin Islands.[6]  The secured creditor later obtained relief from
stay (which the Stewarts did not oppose), allowing it to foreclose on and
obtain possession of the residence.  Order Re: Notice and Motion for
Relief from Stay at 2, docket no. 12.

The Stewarts represented on their petition that their debts
were primarily consumer debts.  They listed on their schedules $522,000
in secured debt and $369,960 in general nonpriority unsecured debt.[7]  The
Stewarts' only secured debt was the mortgage on their former residence.
The Stewarts' general unsecured debt consisted mainly of credit card debt
and debt for building materials and contractor services.  They listed an
average monthly income of $5,380 on their Schedule I and average monthly
expenses of $4,357 on their Schedule J.

Olga Stewart, who started her employment as a traveling
registered nurse on July 14, 2008, reported a gross income of $4,507 on
Schedule I.  The Stewarts included a car rental stipend of $650 and a
housing stipend of $1,350 from Olga Stewart's employer in calculating
their average monthly income on Schedule I.  The Stewarts did not list
the monthly mortgage payment on their Schedule J; in fact, they did not
include rent or a mortgage payment as an expense.  They noted, however,
that they would have a monthly housing expense of approximately $1,350

---

[6] The Stewarts indicated on their Statement of Financial Affairs
that they last occupied the residence in April 2008.  They noted on their
schedules that they were moving to the U.S. Virgin Islands as of the
petition date and listed on their petition a street address in the U.S.
Virgin Islands.

[7] This amount does not include the $72,000 unsecured portion of the
secured mortgage creditor's claim, as listed by the Stewarts on their
Schedule D.

Page 4 - MEMORANDUM OPINION

after five months.  To date, the Stewarts have not amended their Schedule I and Schedule J.

Four days after the § 341(a) meeting on August 1, 2008, the United States Trustee filed a statement pursuant to § 704(b)(1), indicating that the case was not presumed to be an abuse under § 707(b)(2).

Hawkins soon thereafter filed what I have interpreted as a motion to dismiss under § 707(b) ("Motion to Dismiss").  She asserted that, as they intended to surrender the residence and no longer occupied it, the Stewarts inappropriately included the monthly mortgage payment in calculating their monthly disposable income.  Hawkins contended that, by reducing their housing expense to the amount allowed under the Internal Revenue Service ("IRS") local standards ("Local Standards"), the Stewarts would have substantial monthly disposable income with which to fund a chapter 13 plan.  She also argued that, given the totality of their actual financial circumstances, granting the Stewarts relief would be an abuse of chapter 7.[8]

The Stewarts filed an "Amended Chapter 7 Statement of Current Monthly Income and Means-Test Calculation" ("Amended Form B22A") several weeks before the January 12, 2009 final evidentiary hearing on the Motion to Dismiss.  On the Amended Form B22A, the Stewarts' current monthly income remained the same, but their deductions were modified. Specifically, on line 25 of Part V, "Other Necessary Expenses: taxes," the Stewarts listed an expense of $663 for federal, state and local

---

[8] Hawkins did not make this argument in the Motion to Dismiss, but at the final evidentiary hearing on January 12, 2009.

Page 5 - MEMORANDUM OPINION

taxes.[9]  The Stewarts also reduced the monthly mortgage payment from

$8,666.67 to $3,589.[10]  As a result of these modifications, the Stewarts'

monthly disposable income calculated on the Amended Form B22A was

-$634.65, and their 60-month disposable income was -$38,079.

        Several hours after the final evidentiary hearing, the Stewarts

filed a "Second Amended Chapter 7 Statement of Current Monthly Income and

Means-Test Calculation" ("Second Amended Form B22A").[11]  The Second

Amended Form B22A reflected an increased current monthly income of

$6,294, which resulted in an annualized current income of $75,528.  The

---

[9] The Stewarts adjusted their expenses in the Amended Form B22A to
reflect a deduction for taxes "withheld from Olga's pay."  Memorandum in
Response to 707(b) Motion Filed by Creditor at 2, docket no. 32.  The
Stewarts explained that, at the time they filed their bankruptcy
petition, Olga Stewart had obtained employment as a traveling nurse in
the U.S. Virgin Islands.  Memorandum in Response to § 707(b) Motion Filed
by Creditor at 2, docket no. 32.  Because they did not know how much of
her income would be taxed, the Stewarts did not list a deduction for
taxes in the Original Form B22A.  Memorandum in Response to § 707(b)
Motion Filed by Creditor at 2, docket no. 32.  Upon determining her tax
withholding, they modified their expenses in their Amended Form B22A.

[10] The Stewarts filed the Amended Form B22A to reflect their actual
monthly mortgage payments.  In the Original Form B22A, they included the
entire mortgage balance averaged over 60 months, believing that the terms
of the mortgage required a balloon payment in full or a refinance after
completion of the construction of their residence.  Memorandum in
Response to 707(b) Motion Filed by Creditor at 1, docket no. 32.  The
Stewarts later discovered that the mortgage had a 30-year term, which
called for interest-only payments of $3,589 per month for the first five
years of the term.  Memorandum in Response to 707(b) Motion Filed by
Creditor at 2, docket no. 32.  They adjusted the mortgage payment in the
Amended Form B22A accordingly.

[11] At the final evidentiary hearing, I advised the parties that I
would not issue a ruling until the Stewarts filed another amended Chapter
7 Statement of Current Monthly Income and Means-Test Calculation, as the
Amended Form B22A inappropriately included postpetition rather than
prepetition tax withholding as an expense.

Page 6 - MEMORANDUM OPINION

Second Amended Form B22A also listed an increased deduction of $1,558 for federal, state and local taxes.  The monthly mortgage payment remained the same.  The net result of the Second Amended Form B22A was to reduce the Stewarts' monthly disposable income to -$1,050.65, and their 60-month disposable income to -$63,039.

Upon the Stewarts' filing of the Second Amended Form B22A, I took the matter under submission.  This Memorandum Opinion constitutes my findings of fact and conclusions of law, which I make under Fed. R. Civ. P. 52(a), applicable in this contested matter under Fed. R. Bankr. P. 7052 and 9014.  I have jurisdiction to resolve this matter under 28 U.S.C. §§ 1334(b), 157(a), 157(b)(1), and 157(b)(2)(A) and (O).

Discussion

Under § 707(b)(1), I may dismiss a case if I determine that the granting of relief would be an abuse of the provisions of chapter 7.[12] Section 707(b) sets forth two methods, embodied in § 707(b)(2) and (b)(3), by which I am to determine whether the case is an abuse of chapter 7.  In re Haar, 360 B.R. 759, 760 (Bankr. N.D. Ohio 2007).

As noted above, § 707(b)(2) provides a mathematical formula – the means test – to determine whether a debtor has sufficient monthly disposable income with which to repay at least a significant portion of

_____

[12] Section 707(b)(1) provides, in relevant part: "After notice and a hearing, the court . . . on a motion by . . . any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title if it finds that the granting of relief would be an abuse of the provisions of this chapter."

Page 7 - MEMORANDUM OPINION

1  his or her debts.[13]  Id.  If the debtor has sufficient monthly disposable

2  income to pay some or all of his or her debts, the case may be presumed

3  to be an abuse of chapter 7, justifying dismissal or, if the debtor

4  consents, conversion to chapter 11 or chapter 13.

5        Even if no presumption of abuse arises under § 707(b)(2), or

6  the debtor manages to rebut the presumption of abuse, I must consider

7  under § 707(b)(3) whether the case is nonetheless an abuse of chapter 7

8  because either the debtor filed the case in bad faith or the totality of

9  the circumstances of the debtor's financial situation demonstrates abuse.

10  In re Sorrell, 359 B.R. 167, 180 (Bankr. S.D. Ohio 2007).

11        The standards regarding dismissal under § 707(b)(2) and (b)(3)

12  are different.  With respect to dismissal under § 707(b)(2), in this

13

14        [13] Section 707(b)(2)(A)(i) provides: "In considering under paragraph
(1) whether the granting of relief would be an abuse of the provisions of
15  this chapter, the court shall presume abuse exists if the debtor's
current monthly income reduced by the amounts determined under clauses
16  (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser
of –
17        (I) 25 percent or the debtor's nonpriority unsecured claims in the
        case, or $6,575, whichever is greater; or
18        (II) $10,950."

19  Put more simply:

20        If, after subtracting the allowable monthly expenses
21        from the debtor's [current monthly income], the amount
        of monthly disposable income, multiplied by 60, is
22        greater than $10,950, then the debtor 'fails' the Means
        Test.  If the amount is less than $6,575, then the
23        debtor 'passes' the Means Test.  If the amount is
        between $6,575 and $10,950, the debtor only fails the
24        Means Test if the amount is greater than 25% of the
        debtor's non-priority unsecured claims.
25

26  In re Ralston, 2009 WL 322946 at *3 (Bankr. M.D. Fla. Feb. 10,
2009).

Page 8 – MEMORANDUM OPINION

case, I must interpret § 707(b)(2)(A)(iii)(I).  Specifically, are the Stewarts entitled to deduct secured debt payments from their current monthly income in calculating their disposable monthly income under the means test set forth in § 707(b)(2)(A)(i), notwithstanding their surrender of the collateral?

As to dismissal under § 707(b)(3)(B), I must decide whether the Stewarts financial situation demonstrates abuse in the totality of the circumstances.

A.        § 707(b)(2)

Hawkins contends that the Stewarts initially passed the means test only by including the mortgage payment for their surrendered residence in calculating their monthly disposable income.  Although she acknowledges that the Stewarts are entitled to deduct housing expenses, Hawkins argues that deducting the monthly mortgage payment is inappropriate, as it is not reasonable and necessary under § 707(b)(2).

Hawkins asserts that the monthly mortgage payment is unreasonable because the Stewarts lack the means to make the mortgage payment.  She contends that the mortgage payment is unnecessary because the Stewarts no longer occupy the residence, having moved to the U.S. Virgin Islands.

Hawkins argues that Olga Stewart has an annual income of approximately $70,000, or a monthly income of approximately $5,800. According to Hawkins, the allowance for housing expenses and utilities under the Local Standards for Multnomah County is $1,500 per month. Deducting $1,000 for food and "personal goods" and $1,800 for housing and

Page 9 – MEMORANDUM OPINION

utilities, Hawkins estimates that the Stewarts have monthly disposable income of approximately $3,000.[14]  Multiplying this number by 60, Hawkins concludes that the Stewarts have a 60-month disposable income of $180,000.  Based on this calculation, Hawkins claims, the Stewarts fail the means test, thereby making them ineligible for chapter 7 relief.

The issue before me regarding the Motion to Dismiss under § 707(b)(2) centers on the interpretation of § 707(b)(2)(A)(iii)(I). Section 707(b)(2)(A)(iii)(I) provides, in relevant part:

> (iii) The debtor's average monthly payments on account of secured debts shall be calculated as the sum of –
>> (I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition . . . .

Hawkins cites to § 707(b)(2)(A)(ii)(V) as the basis for excluding the monthly mortgage payment in the Stewarts' means test calculations.  Her reliance on this provision is misplaced in this context.[15]

Section 707(b)(2)(A)(ii)(V) allows a debtor to deduct expenses for utilities and other non-mortgage housing expenses in excess of the

---

[14] Hawkins stated that "the allowance for housing and utilities should be the $1,500 that [the Stewarts] are actually paying for housing, plus a reasonable allowance for their actual utility costs."  Objection Filed by Creditor. . . Re: Motion to Settle and Compromise, docket no. 23.  I infer from this statement that Hawkins estimated $300 in utility expenses, for a total allowance of $1,800 for both housing and utilities, which resulted in the $3,000 monthly disposable income she calculated.

[15] I note, however, that Hawkins's argument as to whether the monthly mortgage payment is a reasonable and necessary expense may be relevant to determining the Motion to Dismiss under § 707(b)(3) in the totality of the circumstances, which I address below.

Page 10 - MEMORANDUM OPINION

Local Standards, based on his or her actual expenses for home energy costs.[16]  See In re Simmons, 357 B.R. 480, 486 (Bankr. N.D. Ohio 2006)("The reporting requirements for § 707(b)(2)(A)(ii)(V) are captured on line 37 of the Means Test Form.").  Section 707(b)(2)(A)(ii)(V) therefore does not apply to my determination as to whether the Stewarts may include the monthly mortgage payment in their calculation of their monthly disposable income under the means test.

Hawkins also argues that the monthly mortgage payment exceeds the amount allowed under the Local Standards.  The Stewarts, she asserts, only should be permitted to deduct the amount set under the Local Standards.  I note that the Stewarts took no deduction for mortgage expenses under the Local Standards.[17]  The Stewarts use the monthly mortgage payment as a deduction under § 707(b)(2)(A)(iii)(I) in calculating their monthly disposable income under the means test.  The

---

[16] Section 707(b)(2)(A)(ii)(V) provides:

> In addition [to the expenses set forth under
> § 707(b)(2)(A)(ii)(I)], the debtor's monthly expenses
> may include an allowance for housing and utilities, in
> excess of the allowance specified by the Local
> Standards for housing and utilities issued by the
> Internal Revenue Service, based on the actual expenses
> for home energy costs if the debtor provides
> documentation of such actual expenses and demonstrates
> that such actual expenses are reasonable and necessary.
> (emphasis added).

[17] The Local Standard for mortgage/rent expense is $1,187.  The Stewarts' monthly mortgage expense of $8,666.67 on their Original Form B22A, and $3,589 on their Amended Form B22A and Second Amended Form B22A exceed this amount.  Based on the formula set forth under line 20B, "Local Standards: housing and utilities; mortgage/rent expense," the Stewarts have a deduction of $0.

Page 11 - MEMORANDUM OPINION

question is whether the Stewarts may use this deduction, even though they surrendered the residence.

1. Split in authority in interpreting § 707(b)(2)(A)(iii)(I)

Interpreting a statute begins with its language, <u>Hughes Aircraft Co. v. Jacobson</u>, 525 U.S. 432, 438 (1999), keeping in mind that Congress "'says in a statute what it means and means in a statute what it says there.'" <u>Hartford Underwriters Ins. Co. v. Union Planters Bank, NA</u>, 530 U.S. 1, 6 (2000)(quoting <u>Connecticut Nat'l Bank v. Germain</u>, 503 U.S. 249, 254 (1992)). The court must enforce a statute's language according to its terms, unless such a reading would render it absurd. <u>Lamie v. United States Trustee</u>, 540 U.S. 526, 534 (2004)("It is well established that 'when the statute's language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms.'")(quoting <u>Hartford</u>, 530 U.S. at 6). In the absence of a statutory definition, the court construes a statutory term according to its ordinary, contemporary, and common meaning. <u>San Jose Christian College v. City of Morgan Hill</u>, 360 F.3d 1024, 1034 (9th Cir. 2004).

A split in authority has developed among courts interpreting § 707(b)(2)(A)(iii)(I). <u>See, e.g.</u>, <u>In re Makres</u>, 380 B.R. 30, 33-34 (Bankr. N.D. Okla. 2007); <u>Lindstrom</u>, 381 B.R. at 305; <u>In re Smale</u>, 390 B.R. 111, 115 (Bankr. D. Del. 2008). The majority of courts have concluded that, in calculating their monthly disposable income under the means test, debtors may deduct debt payments under § 707(b)(2)(A)(iii)(I) on property that has been or will be surrendered. <u>Makres</u>, 380 B.R. at 33

Page 12 - MEMORANDUM OPINION

n.9 (collecting cases).

Although most courts on either side of the split agree that interpretation of § 707(b)(2)(A)(iii)(I) is governed by the plain language of the statute, their interpretations differ. See id. at 33. See also In re Hayes, 376 B.R. 55, 61 (Bankr. D. Mass. 2007); In re Gaylon, 366 B.R. 164, 168 (Bankr. W.D. Okla. 2007). In interpreting § 707(b)(2)(A)(iii)(I), courts focus on the phrase, "scheduled as contractually due." Makres, 380 B.R. at 33. See also Lindstrom, 381 B.R. at 305. Both the majority and the minority parse the phrase into two components: "scheduled" and "as contractually due."

Under the minority view, "[a debtor's] schedules and statements [together] form the basis from which the Court should determine whether a debt is 'scheduled as contractually due.'" In re Skaggs, 349 B.R. 594, 599 (Bankr. E.D. Mo. 2006). Cf. In re Ray, 362 B.R. 680, 684-85 (Bankr. D.S.C. 2007)(determining that meaning of "schedule" and "scheduled" elsewhere in Bankruptcy Code is of little use and relying on debtor's statement of intention because phrase, "scheduled as contractually due," is forward-looking calculation that considers debtor's intention to surrender collateral and to make no future debt payments, which does not support deduction of debt payments under § 707(b)(2)(A)(iii)(I)).

Focusing on the phrase, "contractually due," without considering the import of the term "scheduled" and the phrase "in each of the 60 months following the date of the petition" "miss[es] the actual meaning and intent of § 707(b)(2)," the primary purpose of which was to ensure that those debtors who can repay their debts do so. Skaggs, 349 B.R. at 600. When a debtor surrenders property secured by debt, he or she is no

Page 13 - MEMORANDUM OPINION

longer making the scheduled debt payments.  Allowing debtors to take a deduction under § 707(b)(2)(A)(iii)(I) when they are not actually making debt payments thus defeats the purpose of the means test.  See In re Harris, 353 B.R. 304, 309-10 (Bankr. E.D. Okla. 2006).  Under the minority view, then, a debtor cannot include a deduction for monthly payments for secured debt in calculating his or her monthly disposable income under the means test, when he or she surrenders the collateral.

Under the majority view, epitomized by In re Walker, 2006 WL 1314125 (Bankr. N.D. Ga. May 1, 2006), "scheduled" and "as contractually due" are construed in their ordinary senses.  Id. at *3.  See also, e.g., Fokkena, 373 B.R. at 654; Ralston, 2009 WL 322946 at *6; In re Benedetti, 372 B.R. 90, 95 (Bankr. S.D. Fla. 2007); and In re Kelvie, 372 B.R. 56, 61-62 (Bankr. D. Idaho 2007).

"Scheduled" means "'to plan for a certain date,'" while "as contractually due," means that "the debtor is legally obligated under the contract . . . to make a payment in a certain amount . . . for a set number of months into the future."  Walker, 2006 WL 1314125 at *3 (citation omitted).  Putting these two components together, "payments that are 'scheduled as contractually due' are those payments that the debtor will be required to make on certain dates in the future under the contract," whether or not the debtor actually makes those future payments.  Id.

A debtor's surrender of the collateral does not affect his or her ability to take the deduction under the means test, which provides an historical "snapshot" of the debtor's financial circumstances averaged over a period of six months prepetition.  As Walker reasons:

Page 14 - MEMORANDUM OPINION

The use of the phrase "contractually due" also indicates an intent to permit a deduction for all secured debts, regardless of whether . . . the collateral is surrendered. The surrender of the collateral does not change the fact that the payments are "contractually due." When a debtor files the bankruptcy petition, the debtor is contractually due for payments on the outstanding secured debts for the length of the contract. The debtor's contractual liability for the debt is not eliminated upon the surrender of the collateral. At the earliest, it may be eliminated by the entry of the discharge. At the latest, the contractual obligation may never actually be eliminated, but instead, the creditor would merely be enjoined from collecting the debt from the debtor <u>in personam</u>. In other words, nothing the debtor does or does not do changes the fact that scheduled payments remain contractually due.

. . .

Even if the debtor does surrender the collateral, the surrender of the collateral does not change the fact that the payments are "scheduled as contractually due to a secured creditor." Following the surrender of the collateral, the creditor remains a secured creditor at least until the collateral has been liquidated and the proceeds are applied to satisfy the debt.

<u>Id.</u> at *4 (citations omitted). <u>See also</u> <u>Haar</u>, 360 B.R. at 764; <u>Sorrell</u>, 359 B.R. at 186; and <u>Simmons</u>, 357 B.R. at 484-85. Thus, under the majority view, debtors may deduct secured debt payments contractually due as of the petition date in their means test calculations, notwithstanding their surrender of the collateral.

2.  Section 707(b)(2)(A)(iii)(I), interpreted according to its terms, allows the Stewarts to deduct debt payments on their surrendered residence

Based on my review of both the majority and minority decisions, I conclude that the majority view provides a better reasoned analysis that comports with the plain meaning approach to statutory construction.

Page 15 - MEMORANDUM OPINION

The minority's interpretation of § 707(b)(2)(A)(iii)(I) does not accord with the plain meaning approach. As the court in _In re Randle_ pointed out, the plain language of the statute "does not say that the debtor can deduct this amount only if she intends to keep the collateral post-petition. It does not say that the debtor can deduct this amount only if she intends to continue making the payments due post-petition." 358 B.R. 360, 363 (Bankr. N.D. Ill. 2006), _aff'd_ _Randle v. Neary (In re Randle)_, 2007 WL 2668727 (N.D. Ill. July 20, 2007). The statute simply requires the court "to consider only the amounts due under the contract itself." _Id._ _See also_ _Fokkena_, 373 B.R. at 654 ("[T]here is no conditional language in § 707(b)(2)(A)(iii) that requires that a debtor must intend to continue to pay the contractually due amounts in order to claim the expense, and a debtor's intent to surrender her collateral does not alter her contractual obligation to make payments.")(citation omitted).

By conditioning the debtor's use of the deduction under § 707(b)(2)(A)(iii)(I) on whether he or she retains the collateral and actually makes payments on it, the minority is inserting language into the statute which is at variance with its plain meaning. _See_ _Simmons_, 357 B.R. at 485 ("To read into this provision some qualification based upon only a possible post-petition modification of secured debt that is otherwise contractually due on the petition date would go beyond the clear and plain meaning of the statute.").

I agree with the majority that under a plain reading of its language, § 707(b)(2)(A)(iii)(I) allows debtors, when calculating their monthly disposable income under the means test, to deduct from their

current monthly income the average payments on debts secured by collateral that they surrender. Reading the words in § 707(b)(2)(A)(iii)(I) as a whole, I find that the statute does not require debtors to retain the collateral and actually make payments on secured debts "as a prerequisite to allowing the deduction."[18] Benedetti, 372 B.R. at 95. If Congress had intended that debtors be precluded from deducting payment obligations secured by surrendered collateral in calculating their monthly income for means test purposes, they could have used expense deduction language specifying secured debt payments that debtors continue to make postpetition rather than secured obligations "scheduled as contractually due" on the petition date.

Accordingly, I find that the Stewarts appropriately may deduct their monthly mortgage expense under § 707(b)(2)(A)(iii)(I) in calculating their monthly disposable income. At the time they filed their chapter 7 petition, the Stewarts still were contractually liable to the creditor on the mortgage, even though they no longer occupied the residence. The filing of their bankruptcy petition and the surrender of their residence did not eliminate the Stewarts' contractual obligation to make their monthly mortgage payments to the creditor.

Deducting the mortgage payment from their current monthly income, as allowed under § 707(b)(2)(A)(iii)(I), I determine that the

_____

[18] Some courts in the majority believe that the issue of whether "scheduled as" should be given its ordinary, common meaning or a bankruptcy-specific meaning is a distinction without a difference, because, under either interpretation, the scheduling of a secured debt does not change the fact that the payments on the secured debt are contractually due. See Lindstrom, 381 B.R. at 307; Hayes, 376 B.R. at 62; Haar, 360 B.R. at 766.

Stewarts have a negative disposable income.  Accordingly, no presumption

of abuse arises under § 707(b)(2)(A), and I deny the Motion to Dismiss

under § 707(b)(2).


B.        Dismissal based on the totality of the circumstances under
          § 707(b)(3)(B)

          Section 707(b)(3) provides, in relevant part:

          In considering under paragraph (1) whether the granting of
relief would be an abuse of the provisions of this chapter in a case in
which the presumption in subparagraph (A)(i) of such paragraph does not
arise or is rebutted, the court shall consider –
          . . .
                    (B) the totality of the circumstances . . . of the
                    debtor's financial situation demonstrates abuse.

          Section 707(b)(3)(B) does not provide any guidance as to the

factors to consider in evaluating the totality of the debtor's financial

circumstances.  In re Talley, 389 B.R. 741, 743 (Bankr. W.D. Wash. 2008).

Courts have recognized, however, that § 707(b)(3) is a "codification of

pre-BAPCPA case law," thus they apply pre-BAPCPA case law when

determining whether to dismiss a case for abuse.  Id. (quoting In re

Stewart, 383 B.R. 429, 432 (Bankr. N.D. Ohio 2008))(internal quotations

omitted).

          The Ninth Circuit considers six nonexclusive factors in

evaluating the totality of the circumstances under § 707(b)(3):

          (1) Whether the debtor has a likelihood of sufficient
          future income to fund a Chapter 11, 12 or 13 plan which
          would pay a substantial portion of the unsecured
          claims;
          (2) Whether the debtor's petition was filed as a
          consequence of illness, disability, unemployment, or
          some other calamity;
          (3) Whether the schedules suggest the debtor obtained
          cash advancements and consumer goods on credit

Page 18 - MEMORANDUM OPINION

exceeding his or her ability to repay them;
        (4) Whether the debtor's proposed family budget is
        excessive or extravagant;
        (5) Whether the debtor's statement of income and
        expenses is misrepresentative of the debtor's financial
        condition; and
        (6) Whether the debtor has engaged in eve-of-bankruptcy
        purchases.

Price v. United States Trustee (In re Price), 353 F.3d 1135, 1139-40 (9th

Cir. 2004).

        Among the six Price factors, the Ninth Circuit has determined

that the debtor's ability to pay his or her debts is of primary

importance. Id. at 1140. Thus, "a debtor's ability to pay his debts

will, standing alone, justify a section 707(b) dismissal." Id. (quoting

Zolg v. Kelly (In re Kelly), 841 F.2d 908, 914 (9th Cir. 1988))(internal

quotations omitted).

        Although Price concerned interpretation of pre-BAPCPA § 707(b),

the first factor retains its importance in a determination of abuse under

current § 707(b)(3). See In re McUne, 358 B.R. 397, 399 (Bankr. D. Or.

2006)(finding that fact that no presumption of abuse arises under

§ 707(b)(2) does not prevent court from considering a debtor's actual

ability to pay his or her unsecured debts under a chapter 13 plan in

determining whether dismissal is appropriate in the totality of the

circumstances).

        Hawkins advances arguments on the first and sixth Price

factors. I address her arguments in reverse order.

        With respect to the sixth Price factor, based on the Stewarts'

testimony, I find Hawkins's argument unavailing. Hawkins alleges that

the Stewarts took a month-long "exotic vacation" and two trips between

Page 19 - MEMORANDUM OPINION

Oregon and the Virgin Islands, and purchased expensive new wardrobes, all immediately before their bankruptcy filing.  At the final evidentiary hearing, Joshua Stewart testified that the Stewarts had spent less than $1,000 on their entire trip to Thailand; they spent $3 to $5 a day for a "hut on a beach" and between 50 cents and $1 per meal.  Olga Stewart testified that she and Joshua vacationed in Thailand in April 2008, three months before they filed their chapter 7 petition.  She also testified that it was not until June 2008, when the Stewarts began receiving calls from one of their creditors, that they contemplated filing for bankruptcy.  As to the Stewarts' alleged purchase of new wardrobes, Hawkins provided no evidence, aside from her testimony, to establish that the Stewarts engaged in such purchases.

    As to the first <u>Price</u> factor, Hawkins contends that the Stewarts should not include their monthly mortgage payment as a deduction in calculating their monthly disposable income.  Instead, Hawkins claims, the Stewarts should be allowed $1,800 for housing and utilities, as established under the Local Standards.

    Eliminating the $3,589 monthly mortgage payment, using the $1,800 as the allowed IRS deduction for housing and utilities, and keeping remaining deductions the same, the Stewarts have monthly expense deductions totaling $5,554.75.  My calculations are as follows:

Part V. Calculation of Deductions from income
<u>Subpart A: Deductions under Standards for IRS</u>

| 19A | National Standards: food, clothing and other items | $961 |
|---|---|---|
| 19B | National Standards: health care | $114 |
| 20A | Local Standards: housing and utilities; non-mortgage expenses | $505 |
| 20B | Local Standards: housing and utilities; mortgage/rent expense | $1,800 |
| 22A | Local Standards: transportation; vehicle operation/public transportation expense | $211 |
| 25 | Other Necessary Expenses: taxes | $1,558 |
| 33 | TOTAL EXPENSES ALLOWED UNDER IRS STANDARDS | $5,149 |

Subpart C: Deductions for Debt Payment

| 44 | Payments on prepetition priority claims | $10.75 |
|---|---|---|
| 45 | Chapter 13 administrative expenses | $395 |
| 46 | TOTAL DEDUCTIONS FOR DEBT PAYMENT | $405.75 |

Subpart D: Total Deductions from income

| TOTAL OF ALL DEDUCTIONS ALLOWED UNDER § 707(B)(2). | $5,554.75 |
|---|---|

The Stewarts report a current monthly income of $6,294. Subtracting $5,554.75 from $6,294, the Stewarts would have a monthly disposable income of $739.25. Multiplied by 60, the Stewarts accordingly would have a 60-month disposable income of $44,355.

Under the first Price factor, the Stewarts must have a likelihood of sufficient future income to fund a plan that would pay a significant portion of their unsecured claims. 353 F.3d at 1139. Prior

Page 21 - MEMORANDUM OPINION

to BAPCPA, courts analyzed a hypothetical chapter 13 case to determine whether the debtor's financial situation demonstrated abuse. In re Parada, 391 B.R. 492, 501 (Bankr. S.D. Fla. 2008). However, the Stewarts' total unsecured debt exceeds the monetary limit for chapter 13 eligibility.[19] The Stewarts further are not "family farmers" and thus are not eligible for relief under chapter 12. The Stewarts are eligible to be debtors under chapter 11, however. See § 109(d). See also Toibb v. Radloff, 501 U.S. 157, 160-61 (1991). I thus consider the first Price factor in my analysis of the totality of the circumstances within the context of chapter 11.

When the debtor is an individual in chapter 11, the plan must provide for payment of all or such portion of earnings from personal services performed by the debtor or other of the debtor's future income to creditors under the plan as is necessary for its execution. 11 U.S.C. § 1123(a)(8).[20]

---

[19] Under § 109(e), only an individual with regular income and such individual's spouse that owe, as of the petition date, noncontingent, liquidated, unsecured debts that aggregate less than $336,900, may file a chapter 13 case. According to their schedules, the Stewarts have $645 in unsecured priority debt, $72,000 in the unsecured portion of the secured mortgage creditor's claim, and $369,960 in unsecured nonpriority debt for total unsecured debt of $442,605. See Scovis v. Henrichsen (In re Scovis), 249 F.3d 975, 982 (9th Cir. 2001)(stating that rule for determining chapter 13 eligibility under § 109(e) is that eligibility should be determined based on debtor's originally filed schedules, as long as schedules were filed in good faith). Hawkins's claim of $19,168 is the only unsecured claim characterized as contingent. Deducting her claim from the total unsecured debt, the Stewarts still have approximately $423,437 in unsecured debt, thereby making them ineligible to file a chapter 13 case.

[20] Section 1123 provides, in relevant part:

(continued...)

Case 08-33275-rld7   Doc 49   Filed 03/16/09

In order for the plan to be confirmed over an unsecured creditor's objection, an individual debtor in chapter 11 either must pay all unsecured claims in full or propose a plan that devotes an amount equal to five years' [60 months] worth of his or her projected disposable income to unsecured creditors. 11 U.S.C. § 1129(a)(15).[21] The Stewarts' unsecured claims total approximately $423,437. Dividing their 60-month disposable income of $44,355, as calculated above, by $423,437, the

[20](...continued)
    (a) Notwithstanding any otherwise applicable nonbankruptcy law, a plan shall –
. . .
        (8) in a case in which the debtor is an individual, provide for the payment to creditors under the plan of all or such portion of earnings from personal services performed by the debtor after the commencement of the case or other future income of the debtor as is necessary for the execution of the plan.

    To be consistent with §§ 707 and 1322, § 1128(a)(8) was added to make it clear that an individual debtor in chapter 11 must use his or her future income to fund payments to creditors under a chapter 11 plan.  7 Collier on Bankruptcy ¶ 1123.01[8] (15th ed. rev. 2009).

[21] Section 1129(a) provides, in relevant part:

    (15) In a case in which the debtor is an individual and in which the holder of an allowed unsecured claim objects to the confirmation of the plan –
. . .
        (B) the value of the property to be distributed under the plan is not less than the projected disposable income of the debtor (as defined in section 1325(b)(2)) to be received during the 5-year period beginning on the date that the first payment is due under the plan, or during the period for which the plan provides payments, whichever is longer.

Stewarts would only pay approximately 10% on their unsecured claims over five years. If Hawkins's claim is added to the unsecured claims total, the potential distribution to the Stewarts' unsecured creditors under a chapter 11 plan would be less. And these calculations do not take into account the increased administrative expenses of a chapter 11 case (e.g., converting the chapter 7 case to a chapter 11 case, confirming a plan, and potentially litigating the validity of Hawkins's contingent claim), which would reduce any potential distribution to unsecured creditors even further. See In re Maya, 374 B.R. 750, 755 (Bankr. S.D. Cal. 2007) ("Chapter 11 cases are more expensive, and the administrative costs would reduce the funds to be distributed to creditors."). Moreover, there is a risk that the Stewarts would not be able to perform their obligations over five years under a chapter 11 plan (e.g., if Olga Stewart lost her job).

Based on the record before me, Hawkins has not established that the Stewarts have sufficient excess income to fund a chapter 11 plan that would pay a substantial portion of their unsecured debt, i.e., more than pennies on the dollar, over the term of a five-year plan.

Given these circumstances, I do not find that the first Price factor has been satisfied and I conclude that in the totality of the circumstances, dismissal of the Stewarts chapter 7 case is not appropriate under § 707(b)(3).

Conclusion

Based on the foregoing analysis and review of the record before me, I deny the Motion to Dismiss. The court will enter an order

consistent with the conclusions reached in this Memorandum Opinion.

###

cc:    Jeffrey Totten
       Emily T. Hawkins